# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JEREMY ROWAN and MELISSA ROWAN, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. CIV-19-00205-PRW ) |
| STATE FARM FIRE AND CASUALTY COMPANY and BRODOC LLC d/b/a SERVPRO OF EDMOND, | ) ) ) ) ) |
| Defendants. | ) |

## **ORDER**

The Plaintiffs have filed a Motion to Remand and Brief in Support (Dkt. 6), asking the Court to remand this case to state court because Defendant State Farm Fire and Casualty Company failed to remove this diversity-jurisdiction case before the expiration of the 1-year deadline set forth in 28 U.S.C. § 1446(c)(1). State Farm has filed a Response in Opposition to Plaintiffs' Motion to Remand (Dkt. 8) that also incorporates the arguments set forth in its Notice of Removal (Dkt. 1). Finally, the Plaintiffs have filed a Reply in Support of Motion for Remand (Dkt. 9). Upon due consideration of the parties' submissions, the Court finds that the case should be remanded.

### *Background*

On December 28, 2017, the Plaintiffs filed a lawsuit in state court against Defendants State Farm Fire and Casualty Company (hereinafter "State Farm") and BroDoc

1

LLC d/b/a ServPro of Edmond (hereinafter "ServPro").[1] In their Petition, the Plaintiffs alleged that their home in Kingfisher County, Oklahoma, suffered damage as the result of a storm that occurred April 29, 2017.[2] At the time of the storm, the Plaintiffs' residence was insured by State Farm.[3] Also, the Plaintiffs had hired ServPro to remediate some of the interior damage to the home and its contents, including a sectional sofa.[4] In their lawsuit, the Plaintiffs asserted a breach of contract claim and a bad faith claim against State Farm due to its alleged failure to pay the full amount of benefits owed under the insurance policy.[5] The Plaintiffs also asserted a breach of contract claim against ServPro for its alleged failure to remove fiberglass insulation from the textiles damaged in the storm—including the sectional sofa—as well as a fraud claim due to ServPro's alleged misrepresentations that it would conduct a fair and objective inspection of the damaged textiles and that it had the ability to safely remove fiberglass insulation from the damaged textiles.[6] Plaintiffs alleged damages in excess of $75,000.00.[7]

---

[1] *See generally Rowan v. State Farm Fire & Cas. Co.*, No. CJ-2017-7301 (Okla. Cty. Dist. Ct. filed Dec. 28, 2017). To the extent state court records have been filed of record in this case, the Court cites them herein only with reference to their docket entry number in this case. Documents that are not of record in this case—e.g., state court records and records from the previous removal to federal court—include a reference to the case in which they have been filed of record.

[2] Pls.' Pet. (Dkt. 1-3) ¶ 7, at 2.

[3] *Id.* ¶¶ 5–6, at 2.

[4] *See id.* ¶ 12, at 2.

[5] *Id.* ¶¶ 14–29, at 3–5.

[6] *Id.* ¶¶ 30–43, at 6–7.

[7] *Id.* at 8.

State Farm previously removed the case to this Court in February of 2018 on the basis of diversity jurisdiction.[8] Although ServPro was deemed to be a citizen of the Oklahoma, like the Plaintiffs, State Farm alleged that ServPro was fraudulently misjoined because the claims alleged against ServPro were wholly distinct from the claims against State Farm, such that joinder of the two Defendants should not be permitted under Rule 20 of the Federal Rules of Civil Procedure.[9]

Plaintiffs filed a motion to remand, arguing that the two Defendants were not fraudulently misjoined because the claims against the two Defendants were interrelated. The Plaintiffs alleged there was an existing business relationship between ServPro and State Farm whereby ServPro "gets paid to 'clean' textiles, which saves State Farm money as it does not have to pay out money to replace the personal property."[10] Upon review of the briefing, the Court granted the motion on March 22, 2018.[11] The Court concluded that there were questions of law or fact common to both Defendants, that application of the fraudulent misjoinder doctrine was therefore inappropriate, that diversity jurisdiction did not exist, and that subject matter jurisdiction was lacking.[12]

Further proceedings occurred in state court after the March 2018 remand. Plaintiffs

---

[8] *See* Def. State Farm's 1st Notice of Removal (Dkt. 1) ¶ 6, at 2, *Rowan v. State Farm Fire & Cas. Co.*, No. 5:18-cv-00109-C (W.D. Okla. filed Feb. 2, 2018).

[9] *Id.* at 3.

[10] Pls.' Reply in Support of 1st Mot. to Remand (Dkt. 13) at 4, *Rowan*, No. 5:18-cv-00109-C (W.D. Okla. filed Mar. 9, 2018).

[11] Mem. Op. & Order (Dkt. 18) at 4, *Rowan*, No. 5:18-cv-00109-C (W.D. Okla. Mar. 22, 2018).

[12] *Id.*

served discovery requests upon State Farm on April 25, 2018,[13] including requests for production seeking documents concerning the relationship between State Farm and ServPro.[14] State Farm provided discovery responses on June 12, 2018, and amended discovery responses on June 29th.[15] The Plaintiffs believed many of State Farm's discovery responses were deficient and sought supplementation. Following an August 3, 2018 meeting to resolve the discovery dispute, State Farm made a supplemental production of documents on August 30th.[16] Believing the supplemental responses were still deficient, the Plaintiffs filed a motion to compel discovery on September 13, 2018.[17] That motion wasn't resolved until a hearing was held on October 26, 2018.[18] In November of 2018, State Farm filed a motion for protective order,[19] and ServPro filed an offer to confess judgment in the amount of $4,000.00.[20] The Plaintiffs also issued discovery requests to ServPro on November 27, 2018.[21] The Plaintiffs never accepted ServPro's offer to confess judgment

---

[13] Pls.' Mot. to Compel Docs. from Def. State Farm (Dkt. 1-20) ¶ 3, at 8.

[14] *Id.* at 37 (Exhibit 1 to the Plaintiffs' Motion to Compel is Plaintiffs' First Set of Discovery Requests to Defendant State Farm Fire & Casualty Company, and Requests for Production Nos. 18, 19, and 20 sought documentation related to ServPro).

[15] *Id.* ¶ 4, at 8.

[16] *Id.* ¶¶ 4–5, at 8.

[17] *Id.* at 1.

[18] Okla. Cty. Dist. Ct.'s Appearance Dkt. (Dkt. 1-2) at 6 (showing a "CTFREE" entered on 10-26-2018 with a description of retired Judge Patricia Parrish's ruling from the bench).

[19] Def. State Farm's Mot. for Prot. Order (Dkt. 1-23) at 1.

[20] Def. ServPro's Offer to Confess J. (Dkt. 1-24) at 1.

[21] Pls.' 2d Mot. to Remand (Dkt. 6) at 3.

within the 10-day deadline and contested State Farm's motion for protective order.[22] In December of 2018, the hearing on State Farm's motion for protective order was continued for a month,[23] and the Plaintiffs and State Farm got into a dispute over the journal entry memorializing the state court's October 26th ruling on Plaintiffs' motion to compel.[24] In January of 2019, a new judge took over in the case and conducted a hearing on State Farm's motion for protective order. ServPro provided its discovery responses to the Plaintiffs on January 11, 2019.[25] Seventeen days later, Plaintiffs and ServPro reached a compromised settlement for an undisclosed amount of money, leading the Plaintiffs to file a Dismissal With Prejudice (Dkt. 1-1) of all claims against ServPro on January 30, 2019.

In the meantime, the 1-year removal deadline imposed by 28 U.S.C. § 1446(c)(1) had expired on December 28, 2018. State Farm nonetheless removed this case to federal court a second time on March 1, 2019. State Farm now argues that the one-year time limit on removal did not apply due to the applicability of the "bad faith" exception found in § 1446(c)(1).

*Arguments*

In its second Notice of Removal (Dkt. 1), State Farm contends that Plaintiffs' dismissal of ServPro within 30 days of the 1-year bar on removal demonstrates a bad-faith

---

[22] Pls.' Resp. to Def. State Farm's Mot. for Prot. Order (Dkt. 1-25) at 1.

[23] Okla. Cty. Dist. Ct.'s Appearance Dkt. (Dkt. 1-2) at 6 (showing a "CTFREE" entered on 12-07-2018 with a description of retired Judge Parrish's continuance).

[24] *See* Jt. Mot. to Settle Journal Entry (Dkt. 1-26) at 1.

[25] Def. ServPro's Resps. to Pls.' 1st Interrogs. & Reqs. for Produc. of Docs. (Dkt. 1-5) at 1.

5

effort to avoid a second removal to this Court. State Farm points this Court to a two-step analysis for determining whether "bad faith" exists that was first announced in the case of *Aguayo v. AMCO Insurance Co.*, 59 F. Supp. 3d 1225 (D.N.M. 2014). Under that two-step analysis, State Farm argues that that Plaintiffs did not actively litigate their claims against ServPro after the remand—particularly insofar as they issued discovery to ServPro at a point in time calculated to obtain responses after expiration of the 1-year ban on removal—and that Plaintiffs are therefore not entitled to a presumption of good faith. State Farm further argues that, even if Plaintiffs were entitled to such a presumption, the absence of insurance claim materials related to Plaintiffs' dissatisfaction with ServPro's cleaning of textiles and the Plaintiffs' deposition testimony revealing they never unwrapped the sectional sofa to see or to test whether ServPro had successfully removed the fiberglass both demonstrate that the Plaintiffs' claims against ServPro were baseless, such that bad faith is the only explanation for why Plaintiffs kept ServPro in the case. For added effect, State Farm includes a photo showing the Plaintiffs' sectional sofa beneath an intact ceiling with some minimal amounts of fiberglass insulation on the carpet, but no visible trace on the sofa itself; an explanation accompanying the photo states it was taken the day after the storm and "show[s] minimal, if any exposure to fiberglass insulation."[26]

In their second Motion to Remand (Dkt. 2), Plaintiffs argue that State Farm's Notice of Removal fails to disclose the fact that the Plaintiffs' dismissal of ServPro was the result of a compromised settlement. The Plaintiffs also endorse the two-step analysis set forth in

---

[26] Def. State Farm's 2d Notice of Removal (Dkt. 1) at 11–12.

the *Aguayo* case. Plaintiffs argue they *did* actively litigate their claims against ServPro insofar as they issued discovery to State Farm requesting documents related to ServPro's relationship with State Farm, propounded discovery to ServPro, obtained an Offer to Confess Judgment for thousands of dollars out of ServPro, received discovery responses from ServPro, and entered into a binding settlement with ServPro. Plaintiffs further argue that their deposition testimony reveals they learned that ServPro could never remove fiberglass from the sofa, no matter how much they tried—all of which explains why there was no need to unwrap the sofa, why the claims against ServPro were not just blindly asserted, why ServPro ultimately settled, and why bad faith has not been proved. Plaintiffs also argue that State Farm lacks any direct evidence of bad faith and that any implication of bad faith arising from the timing of ServPro's dismissal is merely suspicion and speculation, which must lead to the conclusion that State Farm cannot meet its burden of proof. In response to State Farm's inclusion of a photo, the Plaintiffs assert that State Farm's photo is "intentionally misleading" and "deceptive" insofar as "it was taken after significant cleanup had occurred," and Plaintiffs enclose two photos of their own that more accurately depict the extent of damage to the sofa: a collapsed ceiling with "piles of fiberglass" insulation covering a sofa, pillows, a quilt, a side table, two chairs, and the carpet.[27] Lastly, the Plaintiffs request an award of reasonable costs and attorney fees pursuant to 28 U.S.C. § 1447(c).

In its Response in Opposition to Plaintiffs' Motion to Remand (Dkt. 8), State Farm

---

[27] Pls.' 2d Mot. to Remand (Dkt. 6) at 9–10.

incorporates and adopts and mostly rehashes the arguments contained in its Notice of Removal. That said, the response did offer some new substantive arguments. Regarding the "active litigation" prong of *Aguayo*'s two-part test, State Farm argues that actions taken by other parties—like ServPro's filing of an offer to confess judgment—and actions that occurred after the expiration of the one-year deadline for removal—like the settlement with ServPro—are not relevant; State Farm believes the Court should only consider whether the Plaintiffs' conduct during the one-year removal window demonstrates "active litigation." But State Farm offers scant authority for these arguments.[28] State Farm also attempts to undercut the Plaintiffs' averment that the settlement with ServPro proves their claims against ServPro were valid by suggesting that it was likely a nuisance-value settlement, but such insinuation was only based upon State Farm's knowledge that ServPro's offer to confess judgment was a mere $4,000 and not upon any knowledge of the exact amount of settlement. Regarding the Plaintiffs' request for costs and attorney fees, State Farm argues that such an award should not be granted because State Farm had an objectively reasonable basis for its removal.

In their Reply in Support of Motion for Remand (Dkt. 9), the Plaintiffs argue that the issuance of discovery alone should be enough to demonstrate active litigation against ServPro. Plaintiffs also argue that the only way State Farm could save face after concealing

---

[28] *See* Def. State Farm's Resp. in Opp'n to Pls.' Mot. to Remand (Dkt. 8) at 6–7 (citing *Parkview Gardens Building Owners Association v. Owners Insurance Co.*, 2017 WL 3288313, at *4 n.4 (D. Colo. May 3, 2017), in support of the notion that actions occurring after the removal window expires are not relevant and citing nothing in support of the notion that everyone else's actions are not relevant).

from the Court the fact of Plaintiffs' settlement with ServPro was to suggest that it was not relevant because it occurred after the removal window expired. Plaintiffs also point out the inconsistency of State Farm's use of a dismissal that occurred after expiration of the removal window to argue in favor of removal and State Farm's insistence that the Plaintiffs should not be allowed to rely upon a settlement that occurred after expiration of the removal window in order to argue in favor of remand:

> It is impossible to fathom how State Farm can rely on this dismissal as the "smoking gun" for its allegation of bad faith, but then argue that the reasons for this dismissal are entirely irrelevant to this analysis. It cannot have it both ways. The fact that Plaintiffs settled with ServPro on January 28 is just as relevant to the Court's analysis as the necessary, subsequent dismissal on January 30.[29]

Plaintiffs also argue that State Farm has no idea what the settlement value was and that, even if the settlement was for $4,000, there is nothing nominal about that amount.

### *The Applicable Law*

"The 'bad faith' exception to § 1446(c)(1)'s one-year removal limitation is of relatively recent vintage,"[30] having become effective on January 6, 2012.[31] In the case of *Richfield Hospitality Inc. v. Charter One Hotels & Resorts, Inc.*, 978 F. Supp. 2d 1194 (D. Colo. 2013), the court provided a synopsis of the legislative history for the bad-faith exception:

---

[29] Pls.' Reply in Support of Mot. to Remand (Dkt. 9) at 2.

[30] *Holman v. Coventry Health & Life Ins. Co.*, No. 5:17-cv-00886-HE, 2017 WL 5514177, at *2 (W.D. Okla. Nov. 17, 2017).

[31] Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, § 105(a), 125 Stat. 758, 762.

9

Congress originally added the one-year limitation on diversity removal to former section 1446(b) as part of the 1988 Judicial Improvements and Access to Justice Act, Pub. L. No. 100–702, § 1016, 102 Stat. 4642, 4669–70 (1988), as "a means of reducing the opportunity for removal after substantial progress has been made in state court," H.R. Rep. No. 100–889 at 72 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5982, 6032 (subsequently presented to the Senate, 134 Cong. Rec. S16,308–09 (daily ed. Oct. 14, 1988)). Ever since, courts and commentators have noted that the provision could "invite tactical chicanery" by allowing plaintiffs to circumvent removal jurisdiction by adding, dismissing, or serving parties, or alternatively, by amending their allegations regarding the amount in controversy, after the deadline has expired. David D. Siegel, *Commentary on 1988 Revision of Section 1446*, 28 U.S.C.A. § 1446 (1994); *see also Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 1097 n.12 (11th Cir. 1994). In response courts adopted varying approaches to deal with such circumstances. Some relied on equitable principles to allow otherwise out-of-time removals, while others hewed to a strict interpretation of the statute. *See Burns,* 31 F.3d at 1097 n.2 (citing cases).

>Congress now has sought to close this loophole in the law by the inclusion of the bad faith exception, now codified at section 1446(c)(1), which was part of the Federal Courts Jurisdiction and Venue Clarification Act of 2011 (the "Act"), Pub. L. No. 112–63, 125 Stat. 758 § 103 (2011). The Act was approved on December 7, 2011, and the relevant amendments to section 1446 became effective on January 6, 2012. *See id.* § 105(a) ("[T]he amendments made by this title shall take effect upon the expiration of the 30-day period beginning on the date of the enactment of this Act[.]").[32]

Since its enactment, the U.S. Court of Appeals for the Tenth Circuit has provided no express guidance concerning how the exception should be applied.

In light of the parties' endorsement of the two-step analysis set forth in the case of *Aguayo v. AMCO Insurance Co.*, 59 F. Supp. 3d 1225 (D.N.M. 2014),[33] and its general

---

[32] *Richfield Hosp. Inc. v. Charter One Hotels & Resorts, Inc.*, 978 F. Supp. 2d 1194, 1196 (D. Colo. 2013).

[33] *See* Def. State Farm's 2d Notice of Removal (Dkt. 1) at 17; Pls.' 2d Mot. to Remand (Dkt. 6) at 5.

acceptance in district courts throughout the Tenth Circuit and beyond,[34] the Court concludes the *Aguayo* analysis is a useful guide for determining whether to utilize § 1446(c)(1)'s bad-faith exception in this case. Aguayo's two-step analysis proposes a burden-shifting framework:

> First, the Court inquires whether the plaintiff actively litigated against the removal spoiler in state court: asserting valid claims, taking discovery, negotiating settlement, seeking default judgments if the defendant does not answer the complaint, et cetera. Failure to actively litigate against the removal spoiler will be deemed bad faith; actively litigating against the removal spoiler, however, will create a rebuttable presumption of good faith. Second, the defendant may attempt to rebut this presumption with evidence already in the defendant's possession that establishes that, despite the plaintiff's active litigation against the removal spoiler, the plaintiff would not have named the removal spoiler or would have dropped the spoiler before the one-year mark but for the plaintiff's desire to keep the case in state court. The defendant may introduce direct evidence of the plaintiff's bad faith at this stage—*e.g.*, electronic mail transmissions in which the plaintiff states that he or she is only keeping the removal spoiler joined to defeat removal—but will not receive discovery or an evidentiary hearing in federal court to obtain such evidence.[35]

---

[34] *H&E Equip. Servs., Inc. v. URS Corp. Architecture PC*, No. 3:18-cv-00690-BAJ-RLB, 2019 WL 1421158, at *2 (M.D. La. Mar. 28, 2019); *Williams v. 3M Co.*, No. 7:18-cv-00063-KKC, 2018 WL 3084710, at *3 (E.D. Ky. June 22, 2018); *Poole v. Principal Life Ins. Co.*, No. 5:18-cv-00336-F, slip op. at 4 (W.D. Okla. June 11, 2018); *Holman v. Coventry Health & Life Ins. Co.*, No. 5:17-cv-00886-HE, 2017 WL 5514177, at *2 (W.D. Okla. Nov. 17, 2017); *Massey v. 21st Century Centennial Ins. Co.*, No. 2:17-cv-01922, 2017 WL 3261419, at *2–7 (S.D. W. Va. July 31, 2017); *Heacock v. Rolling Frito-Lay Sales, LP*, No. 2:16-cv-00829-JCC, 2016 WL 4009849, at *3–4 (W.D. Wash. July 27, 2017); *Parkview Gardens Bldg. Owners Ass'n*, 2017 WL 3288313, at *6–7; *Kamal-Hashmat v. Loews Miami Beach Hotel Operating Co.*, No. 1:16-cv-24864-GAYLES, 2017 WL 433209, at *4 (S.D. Fla. Jan 27, 2017); *Bristol v. Ford Motor Co.*, No. 4:16-cv-01649-JAR, 2016 WL 6277198, at *3–4 (E.D. Mo. Oct. 27, 2016); *McDaniel v. Loya*, 304 F.R.D. 617, 636 (D.N.M. 2015).

[35] *Aguayo*, 59 F. Supp. 3d at 1262–63.

*Aguayo* emphasizes, however, that the standard requires "a smoking gun or close to it. The suspicious timing of a dismissal, a drop in a settlement offer to the removal spoiler after the one-year mark, or an ambiguous comment about how the plaintiff plans to drop the removal spoiler before trial, will not suffice."[36] Although that might be stating the rule too strongly, it appears that *Aguayo*'s requirement "that the defendant must present strong, relatively compelling evidence, direct or circumstantial, of the plaintiff's subjective intent in order to rebut the presumption of good faith" is substantially correct.[37]

*Analysis*

As to *Aguayo*'s first prong, the Plaintiffs' submissions here are sufficient to show that they actively litigated against ServPro after the first remand. The Court specifically finds that actions taken by other parties—like ServPro's filing of an offer to confess judgment and answering discovery propounded by the Plaintiffs—and actions that occurred after the expiration of the one-year deadline for removal—like ServPro's answering discovery propounded by the Plaintiffs and the Plaintiffs' settlement with ServPro—are relevant to the analysis of whether the Plaintiffs actively litigated their claims against ServPro.[38] State Farm's arguments to the contrary are undercut by the fact that State Farm relied both on actions taken after the expiration of the one-year deadline for removal, as pointed out in Plaintiffs' Reply in Support of Motion for Remand (Dkt. 9), and on the

---

[36] *Id.* at 1277 (footnote omitted).

[37] *Holman*, 2017 WL 5514177, at *2.

[38] *See Parkview Gardens Bldg. Owners Ass'n*, 2017 WL 3288313, at *4 n.4 ("To be sure, a plaintiff's actions after the removal window expires are highly relevant . . . .").

conduct of ServPro in making its own arguments.[39] Plaintiffs issued discovery to State Farm requesting documents related to ServPro's relationship with State Farm, propounded discovery to ServPro, obtained an Offer to Confess Judgment for thousands of dollars out of ServPro, received discovery responses from ServPro, and entered into a binding settlement with ServPro. The Court concludes these actions are sufficient to show "active litigation" and to trigger the presumption of good faith.

As to *Aguayo*'s second prong, State Farm offers nothing more than suspicion and speculation. The actual evidence demonstrates that the Plaintiffs' claims against ServPro were made in good faith—particularly ServPro's offer to confess and the compromised settlement. State Farm's attempt to characterize the Plaintiffs' claims against ServPro as baseless because they never unwrapped the sofa after it was "cleaned" and returned is unconvincing, as is State Farm's inclusion in its Notice of Removal (Dkt. 1) of a photo of the sofa "showing minimal, if any exposure to fiberglass insulation." Moreover, State Farm's arguments about fraudulent misjoinder during the first removal conceded the point that the Plaintiffs' claims against ServPro were made in good faith; State Farm never once asserted that the claims against ServPro were unfounded or that ServPro was only included in the lawsuit because of fraudulent joinder. The Court concludes that State Farm's showing falls short of establishing the bad faith necessary to permit removal after expiration of the 1-year removal deadline.

Consequently, remand is appropriate.

---

[39] Def. State Farm's 2d Notice of Removal (Dkt. 1) at 9 (arguing that ServPro "did not participate in the motion practice, attend any of the hearings or the expert inspection").

13

*Costs and Fees*

That leaves the issue of attorney fees and costs. Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." An aware of fees is within the discretion of the Court.[40] "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."[41] "[A] plaintiff's delay in seeking remand or failure to disclose facts necessary to determine jurisdiction may affect the decision to award attorney's fees" and "warrant a departure from the rule in a given case."[42]

Shifting of costs and expenses is warranted here because State Farm lacked an objectively reasonable basis for seeking removal and concealed relevant facts from the Court. As discussed above, State Farm reversed course on its theory of removability since the first removal, which this Court views as demonstrating an unreasonable basis for the second removal. Moreover, State Farm's attempt to characterize the Plaintiffs' claims against ServPro as baseless is undermined by the fact that ServPro filed an offer to confess judgment in state court and eventually entered into a compromised settlement with the Plaintiffs, which further demonstrates that State Farm's attempt to invoke § 1446(c)(1)'s bad-faith exception was unreasonable. Furthermore, State Farm's failure to disclose these

---

[40] *Martin v. Franklin Capital Corp.*, 393 F.3d 1143, 1146 (10th Cir. 2004), *aff'd*, 546 U.S. 132 (2005).

[41] 546 U.S. at 141.

[42] *Id.*

highly relevant facts, as well as their inclusion of a photograph of the damage to the Plaintiffs' sofa that seems calculated to disguise the extent of the damage, warrants an award of attorney fees and costs to the Plaintiffs.

*   *   *

For the reasons stated above, the Court **GRANTS** the Plaintiffs' second Motion to Remand (Dkt. 6). This case is **REMANDED** to the District Court of Oklahoma County, State of Oklahoma. The Plaintiffs' request for costs and expenses is **GRANTED**. The Plaintiffs are hereby **DIRECTED** to submit a motion by no later than September 17, 2019, that states the amount of costs and attorney fees sought or provides a fair estimate of them. Defendant State Farm Fire & Casualty Company may file a response disputing only the amount of costs and attorney fees by no later than September 24, 2019. Any further briefing on the issue will require leave of court to be filed.

**IT IS SO ORDERED THIS 3rd day of September, 2019.**

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE